IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JAMES L. KINCAID, JR.,                )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )   Case No. 10-CV-808-JHP-PJC
                                      )
WELLS FARGO SECURITIES LLC,           )
et al.,                               )
                                      )
    Defendants.                       )

## OPINION AND ORDER

Before the Court is Plaintiff's Motion for Discovery Sanctions, To Compel Production of Documents and for an Order Requiring in Camera Review of Certain Documents ("Plaintiff's Motion") [Dkt. No. 77]. Defendant has objected thereto, [Dkt. No. 90], Plaintiff has replied [Dkt. No. 98] and Defendant has supplemented its objection [Dkt. No. 99]. The Court held a hearing on these motions on Jan. 12, 2012.

For the reasons set forth below, the Motion for Discovery Sanctions is **DENIED**, the Motion to Compel is **GRANTED IN PART AND DENIED IN PART**, and the Motion for Order Requiring *in Camera* Review of Documents is **GRANTED.**

I.
*Background*

Plaintiff James L. Kincaid, Jr. ("Kincaid") brings this action for breach of employment contract. Plaintiff contends that under the contract, in addition to his annual salary, he was entitled to a "special award" of $2.25 million subject to a "3-year cliff vesting schedule." [Dkt. No. 14, at ¶ 8]. The $2.25 million is referred to in the

1

pleadings as "deferred compensation." *Id.* Kincaid alleges that he was terminated about October 11, 2010 and has not been paid his deferred compensation. *Id.* at ¶¶ 11-14. Defendant contends that Kincaid was fired for willful misconduct [Dkt. No. 19, at ¶ 12], and denies an express contractual obligation to pay Kincaid the deferred compensation. *Id.* at ¶ 15.

Plaintiff served discovery requests and Defendant responded in April 2011. Plaintiff filed a Motion to Compel in June 2011 [Dkt. No. 40], and the Court conducted a hearing thereafter. An Order was entered on September 7, 2011 directing Defendant to produce certain documents. [Dkt. No. 60]. The Court also directed a document search based on certain agreed search terms.

Plaintiff complains that Defendant has not complied with the Court's previous discovery Order and requests four remedies:

(1) An Order directing the following fact to be taken as true:

> The termination of Plaintiff James L. Kincaid's employment was an integral part of Wells Fargo's pre-existing business plan to close the Tulsa office of Wells Fargo Securities, LLC and move the company's physical commodities trading office to Charlotte, North Carolina.

(2) An Order directing Defendants to produce memoranda and correspondence relating to the subject matters specifically delineated in the Sept. 7, 2011 Order and ordering Defendant to pay the attorneys' fees and expenses associated with this motion.

(3) An Order directing Defendant to produce log on/log off data for the Wells Fargo Tulsa office for certain specified employees, and the complete personnel files of certain Wells Fargo employees.

2

(4) An Order directing Defendant to produce non-privileged documents listed in its privilege log.

Defendant responds that it conducted a document search using the agreed search terms and has produced all non-privileged, responsive documents it found. Defendant further claims it has provided complete personnel files as requested and all responsive, non-privileged documents as ordered by the Court. It also contends that its privilege log and claims of attorney-client communication or work product comport with existing law.

## II.
### *Applicable Legal Principles*

Plaintiff has requested an adverse inference as a sanction for spoliation of evidence. Generally, pretrial discovery sanctions are non-dispositive in nature and, thus, governed by Fed. R. Civ. P. 72(a). *Powell v. Town of Sharpsburg*, 2009 WL 863348, at *6-7 (E.D.N.C. March 27, 2009); *Point Blank Solutions, Inc. v. Toyobo America, Inc.*, 2011 WL 1456029, at *2-3 (S.D.Fla. April 5, 2011). The penalty actually imposed by the Magistrate Judge – not the sanction requested – governs whether a matter is dispositive. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995). Even though a movant requests a sanction that would be dispositive, if the Magistrate Judge does not impose a dispositive sanction, the case falls under Rule 72(a), not 72(b). *Id.* Since the Court is denying the request for an adverse-inference sanction, this motion is governed by Rule 72(a).

The Tenth Circuit distinguishes between the burden of proof necessary to merit an adverse-inference jury instruction and that necessary for a lesser sanction. *103*

*Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 988-89 (10th Cir. 2006). To warrant an adverse-inference instruction Kincaid must show that Wells Fargo had a duty to preserve evidence because it knew or should have known litigation was imminent, acted in bad faith in destroying evidence, and by its conduct prejudiced Kincaid. *Oldenkamp v. United American Ins. Co.*, 619 F.3d 1243, 1250-51 (10th Cir. 2010).[1]

A party cannot be ordered to produce documents that do not exist. *Oldenkamp v. United American Ins. Co.*, 2008 WL 4682226, at *1 (N.D.Okla. Oct. 21, 2008). Nor can a movant prevail on a spoliation motion unless he can produce some evidence that documents containing relevant information actually existed and were destroyed. *Schrieber v. Fed. Express. Corp.*, 2010 U.S. Dist. LEXIS 25806, *13-14 (N.D.Okla. March 18, 2010) (spoliation motion based on Plaintiff's belief that e-mails existed was denied.). A party seeking spoliation sanctions must establish: (1) that the party having control over the evidence had an obligation to preserve it; (2) that records were destroyed with a "culpable" state of mind; and, (3) the evidence destroyed was relevant and favorable to the movant's claim. *Benton v. Dlorah, Inc.*, 2007 WL 3231431, *4 (D.Kan. Oct. 30, 2007); *Residential Funding Corp. v. Degeorge Financial Corp.*, 306 F.3d 99, 107-08 (2d Cir. 2002).

### III.
*Factual Background*

Plaintiff contends that Defendant(s) schemed to deprive him of his deferred compensation by conjuring up a "good cause" for termination and then moving the Tulsa business operation to Charlotte, N.C. Plaintiff contends that if Defendants

---

[1] A lesser sanction would not require a showing of bad faith. *103 Investors*, 470 F.3d at 988-89.

4

planned to close the Tulsa office there must be memos, financial analyses, etc., justifying or explaining this course of action before December 2010, the earliest documents initially produced by Defendant.

In support of this contention, Plaintiff offers circumstantial evidence such as a Sept. 28, 2010, e-mail string ("the Sept. 28 e-mail") involving Wells Fargo employees Pekka Kauranen ("Kauranen"), John Roncevich, Jon Higgins and Kincaid. In response to an e-mail from Kincaid concerning "Commodity Market Risk Mandate 2010," Wells Fargo's head of commodities trading responds:

> I'm starting to get seriously concerned about our ability to communicate between Charlotte and Tulsa. <u>I am beginning to think that the only way for us to fix this is to start moving the physical operation to Charlotte, where it probably belongs from a control perspective</u>.

Plaintiff's Exhibit 20A, presented to the Court at the Jan. 12 hearing (emphasis added).

Plaintiff contends that this document indicates there was discussion about closing the Tulsa office much earlier than indicated in the documents Defendant has produced. If earlier documents were found, Plaintiff suggests, they must have been destroyed, thereby warranting the adverse-inference instruction.

Wells Fargo did not produce the Sept. 28 e-mail in its initial document production. On Oct. 22, 2011, Kincaid stated in an Affidavit that he remembered receiving an e-mail in late September 2010 from Kauranen. Thereafter, Wells Fargo conducted another search of its documents using the search terms "mandates" and "trade mandates" and on December 20, 2011, located the e-mail Kincaid had mentioned. The e-mail was produced to Plaintiff during the deposition of Kauranen. Plaintiff

5

suggests that if this e-mail were missed, other documents may have been missed or even destroyed.

Plaintiff also points to handwritten notes of Wells Fargo HR employee Lisa Engstrom dated 10/13/10. The notes mention "ongoing discussion about moving the office." Plaintiff contends that these documents "reveal on their face that other documents exist *or at one time existed*." [Dkt. No. 78, at 3 (emphasis in original)].

Defendant denies there was a scheme to close the Tulsa office or avoid paying Kincaid his deferred compensation. It contends that after Kincaid was fired in October 2010, Wells Fargo could not find a suitable replacement. Initially, the Tulsa office was to be overseen out of Houston. Finally, the decision was made – after Kincaid's termination – to close the Tulsa office and move operations to North Carolina.

Defendant states that it has searched voluminous documents using an agreed set of search terms and has not found non-privileged documents of the sort Plaintiff describes. Defendant states that its initial document search did not find the Sept. 28 e-mail because the search did not include the terms "mandate," "mandates," or "trade mandates." After the search with expanded with these additional terms, the Sept. 28 e-mail was discovered and produced.

Defendant has submitted affidavits from six individuals describing the discovery efforts in this case: Paul J. Kennedy, Littler Mendelson law firm, lead counsel; Ron Sotak, attorney with Ryley, Carlock & Applewhite's Document Control Group; Carrie Baker, Wells Fargo Human Resources Consultant; Lee Currington, Technology Manager of Wells Fargo's IT eDiscovery Collections Team; Jana Pearson, Wells Fargo

6

paralegal document collection coordinator; and, John Zumwalde of Kroll OnTrack which is engaged in the discovery data search/process. The gist of these affidavits is that search terms agreed to by the parties were run on Defendant's documents, identifying more than 600,000 pages of potentially responsive documents. After review, some 21,000 pages of non-privileged responsive data were produced. Defendant estimates it has now spent more than $200,000 on discovery in this case. Recently, Defendant located hard drives on computers used by certain Wells Fargo employees, as well as additional instant message data. Additional documents have now been produced.

## IV.
### *Discussion*

**A. Plaintiff's Motion for Discovery Sanctions.**

Plaintiff seeks an adverse-inference instruction based on Defendant's alleged destruction of documents. "Sanctions for spoliation are appropriate where the party had a duty to preserve the evidence because it knew or should have known litigation was imminent, and the other party was prejudiced by the destruction of the evidence." *Hatfield v. Wal-Mart Stores, Inc.*, 335 Fed. Appx. 796, 804, (10th Cir. 2009); *Schrieber*, 2010 U.S. Dist. LEXIS 25806, at *13-14. This sanction, however, is not imposed lightly. As the court stated in *Zubulake v. UBS Warburg LL*, 2003 WL 22410619 (S.D.N.Y. Oct. 22, 2003):

> In practice, an adverse inference instruction often ends the litigation – it is too difficult a hurdle for the spoliator to overcome. The *in terrorem* effect of an adverse inference is obvious. When a jury is instructed that it may "infer that the party who destroyed potentially relevant evidence did so 'out of a realization that the [evidence was] unfavorable,'" the party suffering this instruction will be hard-pressed to prevail on the merits.

7

*Id.*, at *5.

Because it is an extreme sanction, the party seeking an adverse-inference instruction must establish that relevant documents were destroyed in bad faith. *103 Investors*, 470 F.3d at 988-89. Kincaid has two fundamental problems: First, there is no record evidence that *any* document has been destroyed. Second, if document destruction cannot be established, *bad faith* document destruction cannot be established. The Sept. 28 e-mail, for example, belies the claim of destruction. Kincaid's affidavit indicated that a late September 2010 e-mail existed, but had not been produced; however, when more precise search terms were used, the e-mail was located and produced. Clearly, it had not been destroyed.

The party seeking spoliation sanctions must offer some evidence that relevant documents have been destroyed. *Eg.*, *Jackson v. F.I.E. Corp.*, 2007 WL 1259216, at *5 (E.D.La. April 30, 2007), *vacated on other grounds*, *Jackson v. Fratelli Tanfoglio Di Tanfoglio Bortolo & C.S.N.C.*, 310 Fed.Appx. 629 (5th Cir. 2009) (noting that Plaintiffs' belief that Defendants had destroyed relevant documents was not supported by any evidence); *Kermode v. University of Mississippi Medical Center*, 2011 WL 2619096, at *5 (S.D.Miss. July 1, 2011) (Plaintiff's unsupported allegation that e-mails were destroyed "is insufficient to warrant an evidentiary hearing on the matter of spoliation.").

Generally, the fact of destruction is not in issue. For example, in *103 Investors*, *supra*, there was no question that Plaintiff had destroyed part of a busway which was the focus of the lawsuit. In *Hatfield*, *supra*, a slip and fall case, it was undisputed that

8

Wal-Mart had not preserved certain surveillance tapes. By contrast, here the basic fact of destruction is very much an issue. Defendant contends nothing has been destroyed; Plaintiff believes otherwise. However, at this juncture Kincaid's proof of spoliation is his *belief* that certain documents must exist; that is, that a large company like Wells Fargo simply could not close a branch office without more documentation than has been identified thus far. If such documents have not been produced, states Plaintiff, it follows that they must have been destroyed.

Plaintiff's belief is not sufficient. As the Court noted in *Schrieber*:

> Although Schrieber states in his deposition that he believes there are other e-mails, he is unable to conclusively state if, or when the other e-mails were sent, or what they said. As such, it is possible there were no other e-mails or they did not contain information relevant to this litigation.

*Schrieber*, 2010 U.S. Dist. LEXIS 25806, at *14.

Plaintiff has not established that any document has been destroyed; thus, Plaintiff has failed to satisfy this requirement for a spoliation sanction. *103 Investors*, 470 F.3d at 989. Clearly, if there is no evidence of destruction, Plaintiff cannot establish *bad faith* destruction. Thus, Plaintiff cannot satisfy this requirement for an adverse-inference instruction either.

For these reasons, Plaintiff's Motion for Discovery Sanctions is **DENIED**.

**B. Plaintiff's Motion to Compel Production of Documents.**

Plaintiff's Motion to Compel seeks production of certain documents outlined in the Court's Sept. 7, 2011 Order. Specifically, Plaintiff seeks production of "all documents (as defined in Plaintiff's request) that refer to the closing or relocating (or

9

proposed closing or relocating) of the Tulsa office or the reasons therefor." The parties have employed specific search terms to locate documents and Defendant asserts that it has produced all non-privileged, responsive documents it has located. Plaintiff has offered no evidence that any memoranda, business plans, etc., related to the closing of the Tulsa office actually exist. Again, the motion is based on Plaintiff's belief that such documents must exist. Defendant further asserts that additional documents might be located if the agreed search terms were refined. The parties apparently have not discussed this possibility.

Defendant has offered the affidavit of Carrie Baker wherein she states that she has searched for, but not found, documents of the type sought by Plaintiff regarding the closing of the Tulsa office. Plaintiff has not offered any evidence that such documents actually exist. Some such evidence is necessary before the Court can compel their production. *Oldenkamp*, 2008 WL 4682226, at *1. Accordingly, the Motion to Compel is **DENIED** with respect to the documents described above.

Plaintiff also asks the Court to compel Defendant to produce log on/log off data for 2010 for the Tulsa office for certain specified employees. Defendant argues this information is not relevant and that it is only available for limited time periods because it is often over-written. Given the broad definition of relevance under Fed. R. Civ. P. 26, the Court cannot say this information could have no relevance to the claims/defenses herein. Therefore, the Motion to Compel is **GRANTED** with respect to the log on/log off data that Defendant has located.

Plaintiff also asks the Court to compel production of complete personnel files of certain Wells Fargo employees. Plaintiff's motion states that Kincaid "knows that in September 2010 a written statement criticizing the performance of Teresa Kanter was prepared, delivered to her and placed in her personnel file." [Dkt. No. 78, at 11-12]. Furthermore, the motion states that Kincaid has uncovered a December 10, 2008 memorandum that "was contemporaneously placed" in Kanter's personnel file. Plaintiff states that these documents were not in the personnel file produced by Defendant.[2] Plaintiff asserts that this suggests that Defendant has not produced the complete personnel file for Kanter and perhaps others.

Defendant states that it has produced complete personnel files and supports that assertion with the sworn affidavit of Carrie Baker, Defendant's Human Resources Consultant. Ms. Baker states:

> At the direction of counsel, I also searched for and collected all of the personnel files that were maintained in the filing cabinets at the now closed Tulsa office, in the ordinary course of business. Specifically, during my last trip to Tulsa in or about January 2011, I received from the Tulsa Office Administrator, Pam Smith, the personnel files that were stored in Plaintiff's former office in a locked file cabinet. Then, I took them back to Charlotte, North Carolina with me and put them in my file cabinet. I have sent true and correct copies of these local personnel files to counsel. Specifically, I located and collected the personnel file for Teresa Kanter and provided a copy of same to counsel. I did not remove any documents that were contained in the Tulsa office employees' personnel files. Nor am I aware that anyone else removed documents from the personnel files. After collecting these documents, I prepared copies of all of the documents contained within the Tulsa office's employees' local personnel files and mailed them to counsel. To the best of my knowledge, the local

---

[2] The statements in Plaintiff's brief concerning Kincaid's knowledge that documents were placed in Kanter's personnel file are not supported by affidavits or other record evidence.

11

> personnel files I mailed to counsel are complete copies of the employees'
> personnel files, as they are kept by Wells Fargo in the ordinary course of
> business.

[Dkt. No. 90-3 at ¶ 6.].

Defendant has also submitted the affidavit of Jana L. Pearson, Wells Fargo paralegal. Pearson states that she requested and oversaw collection of the official Wells Fargo personnel files for 11 individuals: Greg Shuster, Carrie Baker, Andrew Ryan, Teresa Kanter, Emily Chatterton, Timothy Robertson, Stacy Szabla, Pekka Kauranen, Michelle Schulte, and Scott Brewer.[3] [Dkt. No. 90-11, ¶ 4]. In addition, the legacy Wachovia personnel files were stored in a file called "Content Manager." These files were merged into Wells Fargo's official personnel files. *Id.* Pearson states that she did not remove any document from these files and is not aware that anyone else removed any document(s). *Id.*

The record evidence indicates that Defendant has provided the complete personnel files within its possession, custody or control. Accordingly, the Plaintiff's Motion to Compel complete personnel files is **DENIED.**

C. **Plaintiff's Motion for *in Camera* Review.**

Plaintiff contends that Defendant has not sufficiently established the attorney-client and work product privileges it claims over documents listed on its Privilege Log. The initial Privilege Log did not sufficiently identify who the attorneys were in the chain of communication. At the hearing held Jan. 12, 2012, the parties were directed to

---

[3] Pearson was unable to locate a personnel file for Ron Bethel as requested by Plaintiff. [Dkt. No. 90-11, ¶ 4].

12

review the Privilege Log and try to resolve issues concerning the claimed privileges. Plaintiff was directed to designate the specific documents he feels are not privileged. Plaintiff's Motion is **GRANTED.** Within 10 days of Plaintiff's designation of specific Privilege Log entries, Defendant shall submit those documents for *in camera* review. Included with the documents should be a list identifying each person who name appears on the privilege log and noting who is a lawyer.

Each party shall bear its own costs and fees associated with these motions.

**IT IS SO ORDERED** this 19th day of January 2012.

_____
Paul J. Cleary
United States Magistrate Judge