IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES L. KINCAID, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-CV-808-JHP-PJC |
| | ) |
| WELLS FARGO SECURITIES, | ) |
| LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

The Court has undertaken an *in camera* review of some 200 pages of documents for which Defendants claim attorney-client privilege, work product protection or both. In general, the Court concludes that Defendants' claims of privilege/work product are valid. In a few instances, the Court finds that the requirements for privilege/work product status have not been satisfied and that three documents – C-121, C-143, and C-183 – should be produced.

## APPLICABLE LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides for discovery "regarding any *nonprivileged* matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b) (1) (emphasis added). Relevance for Rule 26 purposes has a broad meaning and includes any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* By excluding privileged information from the broad sweep of discovery, Rule 26 seeks to find an appropriate balance between the

1

truth-seeking goal of discovery and the purpose of the stated privilege. *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 387 (N.D.Okla. Feb. 17, 2010).

In a diversity case such as this, issues related to the attorney-client privilege are controlled by state law, while claims of attorney work product are matters of federal law. *Id.* at 388 (*citing Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir.1998)).

The attorney-client privilege, codified at Okla. Stat. tit. 12, § 2502, protects communications between an attorney and the client "who consults an attorney with a view towards obtaining legal services or is rendered professional legal services by an attorney." Okla. Stat. tit. 12, § 2502(A)(2).  The privilege protects the client's confidential communications as well as the attorney's responsive communications that reveal the content of the client's communications. This is sometimes referred to as the attorney's "derivative protection." PAUL R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 5:14 (Thomson West 2d ed.1999) (footnotes omitted) (hereafter, "Rice").  "In order to establish the privilege, it must be shown that the status occupied by the parties was that of attorney and client and that their communications were of a confidential nature." *Chandler v. Denton,* 741 P.2d 855, 865 (Okla.1987).  And the confidential communications must be "made for the purpose of facilitating the rendition of professional legal services to the client." Okla. Stat. tit. 12, § 2502(B).[1]  The

---

[1] This privilege extends to representatives of the client and lawyer, as well:

> B. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the

2

"communication between the lawyer and client must relate to legal advice or strategy sought by the client." *Lindley*, 267 F.R.D. at 388-89 (*quoting United States v. Johnston*, 146 F.3d 785, 794 (10th Cir.1998) (applying Oklahoma law).  *See also*, *In re CFS-Related Securities Fraud Litigation*, 223 F.R.D. 631, 635 (N.D.Okla.2004) ( "Generally communications between a lawyer and the lawyer's client for the purpose of obtaining legal advice is a privileged communication which is protected by the legal process."). The mere fact that an attorney was involved in a communication "does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil. Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995), *cert. denied*, 517 U.S. 1190 (1996).  Although the "status" of lawyer is one of the Court's considerations in determining the nature of the advice, the Court must consider the context of or circumstances surrounding the communication.

---

        purpose of facilitating the rendition of professional legal services to the client:
           1. Between the client or a representative of the client and the client's attorney or a representative of the attorney;
           2. Between the attorney and a representative of the attorney;
           3. By the client or a representative of the client or the client's attorney or a representative of the attorney to an attorney or a representative of an attorney representing another party or a representative of an attorney representing another party in a pending action and concerning a matter of common interest therein;
           4. Between representatives of the client or between the client and a representative of the client; or
           5. Among attorneys and their representatives representing the same client.

Okla. Stat. tit. 12, § 2502(B) (2002).

Many courts have relied on two rebuttable presumptions (though often not stated expressly) regarding the role of the lawyer in determining the nature of the advice: (1) if outside counsel is involved, the confidential communication is presumed to be a request for and the provision of "legal advice"; and (2) if in-house counsel is involved, the presumption is that the attorney's input is more likely business than legal in nature. As a result, most of these courts apply "heightened" scrutiny to communications to and from in-house counsel in determining attorney-client privilege. *E.g., Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,* 230 F.R.D. 398, 411 n. 20 (D.Md.2005) ("While courts state that they do not intend to weaken the privilege [by imposing a "higher burden on in-house counsel to 'clearly demonstrate' " that counsel was giving legal advice], they are mindful that corporate clients could attempt to hide mountains of otherwise discoverable information behind a veil of secrecy by using in-house legal departments as conduits of otherwise unprivileged information."); *Marten v. Yellow Freight System, Inc.,* 1998 WL 13244, at *6 (D.Kan.) ("Although such status does not alter the attorney/client privilege ... when the attorney serves also in another capacity, such as vice president, his advice is privileged 'only upon a clear showing' that it was given in a professional legal capacity."). Consequently, a Court's determination of attorney-client privilege in this context often requires time-consuming review of each document.  *See generally* Tom Spahn, "*Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?*" 16 Stan. J.L. Bus. & Fin. 288, 307 (Spring 2011); *Lindley*, 267 F.R.D. at 389-90.

Attorney work product is governed by the federal standard set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Frontier Refining,* 136 F.3d at 702 n. 10. A party seeking work product immunity under Rule 26(b)(3) must establish that the materials are (1) "documents and tangible things;" (2) "prepared in anticipation of litigation or for trial;" (3) "by or for another party or by or for that other party's representative." *Feldman v. Pioneer Petroleum, Inc.* 87 F.R.D. 86, 88 (W.D.Okla.1980) (quoting 8 Wright, Miller and Marcus, Federal Practice and Procedure: Civil § 2024 at 196-197). Rule 26(b)(3) incorporates a two-tier protection of work product. The discovering party may overcome what is referred to as "ordinary work product" or "factual work product" protection of "documents and tangible things" if it establishes a "substantial need" for the materials and an inability "without undue hardship" to obtain the substantial equivalent of the materials by other means. Fed.R.Civ.P. 26(b)(3). However, the Rule instructs that opinion work product, that is, "the mental impressions, conclusions, opinions, or legal theories" of the attorney, requires heightened or special protection. *Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 436, 439 (D.Kan.1987) ("This doctrine provide[s] an almost absolute protection*394 for an attorney's mental impressions and conclusions.").

The proponent of the work-product claim has the burden of establishing the protection. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *Sanchez v. Matta,* 229 F.R.D. 649, 654 (D.N.M. 2004). Establishing work-product protection often depends on a showing that there was a reasonable threat of litigation and that the threat was the motivation for creating the document(s) in question. *United*

*States ex rel. Fago v. M & T Mortgage Corp.,* 238 F.R.D. 3, 6 (D.D.C.2006) (" 'In anticipation of litigation' contains two related, but nevertheless distinct, concepts. One is temporal. The other is motivational."). Courts sometimes address this last issue in terms of a party's "primary motivation" for creating documents. *Id.* at 854; *see Sanchez,* 229 F.R.D. at 655 ("Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."); *Marten,* 1998 WL 13244, at *10 (quoting *EEOC v. GMC,* 1988 WL 170448, at *2 (D.Kan. Aug. 23, 1988)). "Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even likely chance of litigation, does not give rise to work product." *Ledgin v. Blue Cross & Blue Shield,* 166 F.R.D. 496, 498 (D.Kan.1996) (citations omitted).

  A key inquiry is whether the documents would have been created regardless of whether litigation was in the offing. In other words, "the anticipation of future litigation must have been the primary motivation which led to the creation of the documents." *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 152 F.R.D. 132, 136 (N.D.Ill.1993). While the litigation need not be ongoing or imminent, "the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C.1982). In sum, "[d]ocuments which do not refer to work product prepared by an attorney or other agent of a party to aid in forthcoming litigation, and which were generated in the ordinary course of business, are discoverable." *Allendale Mut. Ins.,* 152 F.R.D. at 136.

Work-product protection may also be waived. *United States v. Nobles,* 422 U.S. 225, 239 (1975). The majority view is that the party claiming waiver has the burden of proof on that issue. *Johnson v. Gmeinder,* 191 F.R.D. 638, 643 (D.Kan.2000) (Party asserting waiver of work-product immunity, rather than the party asserting the work-product protection, should have the burden to establish waiver.).

## DECISION

After reviewing each of the documents at issue, the Court finds that Defendants' claims of attorney-client privilege and/or work product protection are generally appropriate. Five documents merit separate discussion.

Document Bates No. C-183 is described on the Privilege Log as a "document forwarded to in-house counsel for legal review or analysis regarding the James Kincaid litigation." Defendants claim attorney-client privilege and work product protection. The document was transmitted on Nov. 3, 2010 – about three weeks before Kincaid filed this lawsuit.

The Privilege Log does not indicate who authored this document or to whom it was initially sent. Thus, it is impossible to conclude on this record that this document is a communication between a client and his/her/its attorney. Furthermore, nothing in the record evidence establishes the requisite elements of work product protection. For example, nothing indicates that the document was prepared at the request of counsel or even with the knowledge of counsel. It could easily be concluded that this is a document created in the ordinary course of business. Therefore, the document should be produced.

C-143, C-185, C-235 all consist of emails transmitting another email relating to letters that Defendant apparently prepared in dealing with Kincaid.  Two of the email transmittals (C-185 and C-235) are post-litigation communications between a company manager and either in-house counsel or a litigation paralegal.  These documents are protected attorney-client communication as they are clearly communication related to the then-pending litigation.  However, Document C-143 is a pre-litigation communication between Carrie Baker and in-house counsel and an Oct. 20, 2010 email concerning certain offer letters.  It does not appear that these communications are for purposes of legal advice or service.  While it is a communication between Human Resources and in-house counsel, it does not appear conclusively from the records that in-house counsel was serving primarily as a legal advisor as opposed to a business manager within Defendant company.  Accordingly, this document should be produced.

Defendants claim that C-121 is a protected attorney-client communication.  The Privilege Log does not indicate the author of the document or any recipient, and there is no indication at whose request the document was prepared.  The record evidence is insufficient to establish the claimed privilege; accordingly, this document should be produced as well.

Accordingly, Documents C-121, C-143, and C-183 shall be produced within 5 days of the date herein.

IT IS SO ORDERED this 1st day of March 2012.

_____
Paul J. Cleary
United States Magistrate Judge