## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES L. KINCAID, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-CV-808-JHP -TLW |
| | ) |
| WELLS FARGO SECURITIES, L.L.C., | ) |
| et al. | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment[1] and Brief in Support,[2] Defendant' Opposition To Plaintiff's Motion for Partial Summary Judgment,[3] and Plaintiff's Reply Brief in Support of His Motion for Partial Summary Judgment.[4] For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

### BACKGROUND

**A. Undisputed Factual Background**[5]

The instant case arises from an employment contract between the Plaintiff Kincaid and

---

[1]Docket No. 72.

[2]Docket No. 73.

[3]Docket No. 83.

[4]Docket No. 95.

[5]The following facts are either not specifically controverted in accordance with Local Civil Rule 56.1(c), or are described in the light most favorable to the non-moving party. Immaterial facts are omitted.

1

Wachovia Capital, a subsidiary of Wachovia Corporation, executed by Plaintiff on July 14, 2008.[6] This contract, entitled "Offer Summary," was executed in connection with Wachovia Investment Holdings, L.L.C.'s acquisition of Resolute Holdings' interest in Odyssey Energy and included an Addendum negotiated by the parties.[7] At the time of this acquisition, Plaintiff was a principal of resolute Holdings.[8] On December 31, 2008 Defendant Wells Fargo Securities, a subsidiary of Wells Fargo Bank, N.A., (Wells Fargo) acquired Wachovia Corporation and assumed Wachovia Capital's liability under the Offer Summary.[9]

At issue in this summary judgment motion is a provision of the Offer Summary that Plaintiff contends entitles him to a Special Award under the Wachovia Special Award Plan (the Plan) in the amount of $2,225,000.[10] This award was officially conferred by letter on January 31, 2009, subject to a three-year *cliff* vesting schedule.[11] According to the vesting schedule, the total amount of the award would have been payable on March 31, 2012, after three years of continued employment,

---

[6]Plaintiff's Brief in Support of His Motion for Summary Judgment at 2, Docket 73.

[7]*Id.* The employment contract generally referred to by the parties is actually an executed document entitled "Offer Summary." For precision and ease of understanding, the Court uses the term "Offer Summary," rather than "employment contract" when referring to terms and conditions from the "Offer Summary" proper, and "employment contract" when referring to the collection of the Offer Summary, Plaintiff's Addendum to the Offer Summary, and the Plan documents.

[8]*Id.*

[9]*Id.* at 3.

[10]*Id. See also* Plaintiff's Reply Brief at 1, Docket No. 95. Although Plaintiff's Motion and Defendant's Response Brief address issues related to breaches of other duties under the Offer summary by the Defendants, Plaintiff clarifies in his Reply that the instant Motion regards only the alleged breach for failure to pay Plaintiff the Special Award.

[11]*Id.*

2

absent Plaintiff's termination "for cause."[12] Defendant Wells Fargo acknowledges that the Wachovia Special Award Plan was in effect at the time of Plaintiff's termination.[13]

On or about October 15, 2010, Defendant Wells Fargo terminated Plaintiff without providing written reasons for the basis of the termination.[14] Instead, representatives for Defendant Wells Fargo orally referred to a "workplace professionalism policy."[15] Defendant Wells Fargo has alleged, through its discovery responses that the contractual grounds for Plaintiff's termination were "for cause" based on "misconduct" pursuant to paragraph 6, subparagraphs (iii) and (iv) of Plaintiff's Offer Summary.[16] These allegations of misconduct, based on the interviews of six Wells Fargo employees, consisted of "(1) requiring female employees to hold Plaintiff's hands while he led them into office meetings, (2) rubbing female employees' shoulders, (3) regularly calling employees "stupid" or "idiot," (4) making sexual innuendoes or other inappropriate comments about female employees, (5) slapping food out of a female employee's hands, (and 6) accusing a female employee of having sex with a customer to get a better price."[17]

Upon dismissal, Plaintiff reviewed his Offer Summary, and believing he was due the Special

---

[12]*Id.*

[13]*Id.* at 5.

[14]*Id.* at 6.

[15]*Id.*

[16]*Id.* at 7.

[17]*See id.* at 8; Defendant's Response Brief at 8, Docket No. 83 (*internal citations omitted*).

Award, demanded payment of the award through counsel.[18] Counsel for Defendant Wells Fargo responded with a letter dated November 9, 2010.[19] In this letter Counsel for Defendant Wells Fargo stated (1) that Plaintiff was terminated "for cause" and was therefore not entitled to any of the payments referenced in the Offer Summary, (2) that the entitlement to payment of the Special Award is determined by the Special Award Plan, (3) that the "Termination for Cause" definition in the Special Award Plan does not offer an opportunity to cure as does the Offer Summary, and that Plaintiff can appeal his termination through "the Company's" (i.e. Wells Fargo's) Termination Appeal Process.[20]

**B. Relevant Procedural Background**

On November 23, 2010, Plaintiff filed the instant suit in Tulsa County District Court.[21] Plaintiff's initial Petition alleged two counts of breach of contract, one for specific performance and one for damages.[22] Defendants removed this case to the Northern District of Oklahoma pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, alleging complete diversity and an amount in controversy well in excess of the $75,000 jurisdictional minimum.[23]

On December 22, 2010, Defendants filed a Motion to Dismiss Plaintiff's Petition.[24] On

---

[18]Plaintiff's Brief in Support of His Motion for Summary Judgment at 9, Docket 73 (*citing* Affidavit of James L. Kincaid Jr. at 7-8, Docket No. 74).

[19]*Id.*

[20]*See id.* (*citing* Letter at 72-73, Docket No. 74).

[21]*See* Petition at 8, Docket No. 2-1.

[22]*Id.* at 13.

[23]*See* Notice of Removal 3-4, Docket No. 2.

[24]See Docket No. 7.

January 5, 2011, Plaintiff filed his First Amended Complaint, and on January 21, 2011 the parties entered a joint stipulation to withdraw Defendants' Motion to Dismiss.[25] Upon entry of the joint stipulation the Court found Defendant's Motion to Dismiss moot.[26] On November 7, 2011, Plaintiff filed his Second Amended Complaint, adding a claim of constructive fraud to his existing breach of contract claim.[27] Plaintiff filed the instant Motion for Partial Summary Judgment eight days later.[28] The Motion is fully briefed and at issue.

## DISCUSSION

### A. Summary Judgment Standard

Although a bit convoluted, Plaintiff's instant Motion for Partial Summary Judgment ultimately asks this Court to find that Wells Fargo's decision to terminate Plaintiff was not "for cause" as defined by Plaintiff's Offer Summary, therefore Defendant breached Plaintiff's employment contract by failing to pay him the Special Award under the Plan.[29] Plaintiff further alleges that Defendants breached the employment contract by failing to afford him the contractual process required to deny him an award under the Plan.[30] Plaintiff similarly asks the Court to grant him summary judgment on those grounds.

Federal Rule of Civil Procedure 56(c) provides the standard courts must use when

---

[25] *See* Docket No.'s 14, 20.

[26] Docket No. 21.

[27] Docket No 72.

[28] *See* Docket No.'s 72-74.

[29] Plaintiff's Brief in Support of His Motion for Summary Judgment at 23, Docket 73.

[30] *Id.* at 11.

5

determining whether summary judgment is proper. According to the rule, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[31] "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[32] If the provisions of a contract are unambiguous, the meaning of that contract is a matter of law for the court.[33] Therefore, barring any genuine issues of fact, this Court can determine the parties' rights and obligations under the contract as a matter of law.

**B. Applicability of the Terms of the Offer Summary**

Plaintiff seeks summary judgment for breach of contract, alleging he was not terminated "for cause" under the terms of the Offer Summary, therefore Defendants' breached their contract by failing to pay him the Special Award. In addition to their arguments that Plaintiff was terminated "for cause" pursuant to the terms of the Offer Summary and therefore not entitled to any of the benefits provided by that contract, Defendants also contend that the Special Award Plan provides a distinct definition of "for cause" and that this language militates against summary judgment.[34] Due to these arguments, before reaching the ultimate issue of whether or not Plaintiff is entitled to summary judgement regarding Defendants' alleged breach, the Court must first determine whether

---

[31]*See Jennings v. Badget*, 2010 OK 7, ¶¶ 4-5, 230 P.3d 861, 864; Fed. R. Civ. P. 56(c).

[32]*Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009).

[33]*See, e.g, GEICO Gen. Ins. Co. v. Northwestern Pac. Indem. Co.*, 2005 OK 40, ¶ 11, 115 P.3d 856, 858; *Schenkel & Shultz, Inc. v. Hermon F. Fox & Associates, P.C.*, 658 S.E.2d 918 (N.C. 2008).

[34]*See* Defendants' Response at 24-25, Docket No. 83.

the terms of the Offer Summary or the terms of the Plan control with regard to the definitions "for cause."

As the Offer Summary itself is apparently a creature of Oklahoma law, this Court, sitting in diversity, must apply Oklahoma law as announced by the highest court of the state.[35] In the absence of any authoritative pronouncement by that court, federal courts, sitting in diversity, must predict how Oklahoma's highest court would rule, following "any intermediate state court decision unless other authority convinces [this Court] that the state supreme court would decide otherwise."[36]

In concluding that the differing "for cause" definitions in his Offer Summary entitle him to summary judgment, Plaintiff largely disregards the terms and conditions of the Plan.[37] Plaintiff contends that the Special Award Plan constitutes a contract relating to the same matters as the Offer Summary and should therefore be read together with the Offer Summary.[38] Plaintiff contends that in reading the two documents as one contract, the Court must defer to the terms of the Offer Summary actually "written" (i.e. negotiated) by the parties, rather than the pre-"printed" terms of the Special Award Plan.[39] In support of this proposition, Plaintiff cites Oklahoma State title 15, §167:

Where a contract is partly written and partly printed, or where part of it is written or

---

[35] *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

[36] *See id.*

[37] *See* Plaintiff's Brief in Support of His Motion for Summary Judgment at 21-22, Docket 73. *But see supra* note 29.

[38] *See* Plaintiff's Brief in Support of His Motion for Summary Judgment at 21-22, Docket 73 (*citing* Okla. Stat. tit. 15, §158).

[39] *Id.*

printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and particular contract in question the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded.[40]

If the Court accepts Plaintiff's legal assertions, it would necessarily need to apply both the "for cause" definition of the Offer Summary, rather than those of the Plan in ruling on Plaintiff's Motion. However, unlike the contract scenarios contemplated in §158 and §167, this is not a case in which multiple instruments were contemporaneously executed by the parties. The Special Award in dispute was included as part of Plaintiff's compensation under his Offer Summary.[41] The specific terms of the Offer Summary read:

> In January 2009 we are pleased to inform you that you will receive a special award *under the Wachovia Special Award Plan* in the amount of $2,225,000 effective on the last day of the month in which your hire date occurs. Your award will be subject to a 3 year *cliff* vesting schedule. Executive compensation will provide you with full details of your award on or shortly after your hire date.[42]

These terms clearly reference the Plan and note that its terms and conditions were delineated in a pre-existing document, the details of which would be provided after the start of Plaintiff's employment. From this language, the Court finds that the terms and conditions of the Plan were incorporated into Plaintiff's Offer Summary by this reference to the Plan.[43]  Even so, this

---

[40] Okla. Stat. tit. 15, §167.

[41] *See* Offer Summary at 11, Docket No. 74.

[42] *Id.* (*emphasis added*).

[43] *Cf. New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2nd Cir.1997) ("Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt") (*citing* 4 *Williston on Contracts* §628, at 903-04 (3d ed.1961)).

incorporation does not support Plaintiff's legal conclusion that the Court must apply §167 and find that the terms and conditions of the Offer Summary control disbursement of awards under the Plan.

As the terms and conditions of the Plan were incorporated by reference into the Offer Summary, the Court must read the provisions of the entire contract, taking the two documents together, so as to give effect to every part if reasonably practicable.[44] The Court reads the contract language in its plain and ordinary meaning unless a technical meaning is conveyed, and where there is no ambiguity, the Court interprets the contract terms as a matter of law.[45]

A plain reading of the phrase "under the Plan" is unambiguous, indicating that the Special Award is granted under the terms of the Plan, and that the obligations under the Plan are necessarily distinct from those in the Offer Summary. Had the parties intended the terms and conditions of Plaintiff's award under the Plan to differ from those already set out in the pre-existing Plan documents, they could have explicitly set this out in the Offer Summary or negotiated Addendum. Instead, the Offer Summary explicitly states the Special Award is granted *under the existing Special Award Plan*.[46] This "under the Plan" language demonstrates that the benefit bargained for by the inclusion of this clause is not the $2.25 million Special Award, the benefit is Plaintiff's participation in the pre-existing Plan under which the Special Award will be disbursed.

---

[44]*Pierce Couch Hendrickson Baysinger & Green v. Freede*, 1997 OK 33, ¶ 18, 936 P.2d 906, 911 (*citing* 15 Okla.Stat.tit. §157).

[45]*Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc.*, 2007 OK 12, ¶27, 160 P.3d 936, 946 *(internal citation omitted)*.

[46]*See* Offer Summary at 11, Docket No. 74. This clause also provides that the exact details of that plan would be provided subsequent to Plaintiff's signing of the Offer Summary. *Id.* The fact that the award was not officially conferred until January 31, 2009, well after Plaintiff's July 14, 2008 execution of the Offer Summary, further evidences that the Special Award was distinct from Plaintiff's other compensation. *See* Plaintiff's Brief in Support of His Motion for Summary Judgment at 3, Docket 73.

Under the elementary principles of contract interpretation discussed above, the Court cannot apply §167 to the entire contract in the manner suggested by Plaintiff. To do so would render the terms and conditions of the Plan superfluous, despite the plain language of the Offer Summary clearly establishing that the Special Award sought by Plaintiff in his Motion is granted pursuant to the terms and conditions of the Plan. Because of this clarity, the two documents comprising the contract are not in conflict and construction pursuant to §167 is inapplicable.

Ultimately, Plaintiff's Offer Summary does not set out the conditions under which Plaintiff would receive the Special Award under the Plan. In fact, Plaintiff's participation in the Plan *as it existed* appears to be the sole bargained-for benefit provided by the Offer Summary with regard to the Plan. Because the Offer Summary unambiguously sets out that the Special Award was granted pursuant to the Plan, and because Plaintiff's *participation* in the Plan, rather than the award itself, is the material benefit set out in the Offer Summary, the question of whether or not Defendants breached their duties under the Plan is rightly governed by the Plan's terms and conditions.

**C. "For Cause" Under the Plan**

Finding the terms and conditions of the Plan to be incorporated by reference into the Offer Summary, the Court analyzes the Plan's terms and conditions under contract principles. As noted above, when determining issues of law in a diversity action, this Court generally has an obligation to apply Oklahoma law as announced by the highest court of the state.[47] However, the Special Award Plan at issue in this summary judgment motion contains an explicit, and apparently uncontested,

---

[47]*Comm'r v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

10

choice-of-law provision that dictates the use of North Carolina law.[48] In the absence of a challenge to the validity of the provision, Oklahoma's choice of law rules generally give effect to such provisions.[49]

Consequently, the Court looks to the decisions of North Carolina courts regarding the Plan's interpretation, noting that North Carolina contract law differs little from the generally accepted principles of contract law used by Oklahoma and other states. Under North Carolina law, "[a] contract must be considered as an entirety; the problem is not what the separate parts mean, but what the contract means when considered as a whole."[50] Contract language that is plain and unambiguous on its face can be interpreted as a matter of law; however, if it is ambiguous, it is a question for the jury.[51] "[A]n ambiguity exists in a contract if the language of the contract is fairly and reasonably susceptible to either of the constructions asserted by the parties."[52] Whether the language of the contract is ambiguous or unambiguous is a question for the court to determine.[53] However, the fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the

---

[48] *See* Wachovia Corporation Special Award Plan (Plan) at 26, Docket No. 83-2 ("The Plan and all rights hereunder shall be construed and governed in all respects in accordance with the laws of the State of North Carolina without resort to its conflict-of-laws provisions").

[49] *See, e.g., Dean Witter Reynolds, Inc. v. Shear*, 796 P.2d 296, 298-99 (enforcing an uncontested choice-of-law provision).

[50] *Meehan v. American Media Intern.*, LLC, 712 S.E.2d 904 (N.C. Ct. App. 2011) (*internal quotation omitted*).

[51] *Liptrap v. Coyne,* 675 S.E.2d 693, 696 (N.C. Ct. App. 2009).

[52] *Carolina Place Joint Venture v. Flamers Charburgers, Inc.*, 551 S.E.2d 569, 571 (N.C. Ct. App. 2001) (*internal quotations omitted*).

[53] *Anderson v. Anderson*, 550 S.E.2d 266, 269 (N.C. Ct. App. 2001).

language of the contract is, at best, ambiguous.[54]

The parties agree that the Special Award was subject to a *cliff* vesting schedule, under which vesting was contingent on Plaintiff's continued employment for three years.[55] The 2006 Amendment to the Plan states succinctly:

> Should the Participant voluntarily resign from Employee status or should his or her Employee status be involuntarily terminated as a result of a Termination for Cause, then each of his or her unvested Special Award Subaccounts shall be immediately forfeited.[56]

The Plan's definitions at Section 3.16 provides an extensive, but not exhaustive, list of what may constitute a "for cause" termination:

> **"Termination for Cause"** shall include, *but shall not be limited to*, the termination of Employee status due to (i) any act or omission on the part of the Employee that constitutes a breach of his or her duties or obligations to the Participating Employer or other Affiliated Company, (ii) the Employee's commission of any act of fraud, misappropriation, embezzlement or dishonesty that may be reasonably expected to have an injurious effect upon the Participating Employer or other Affiliated Company, (iii) the Employee's failure to obtain or retain any NYSE, NASD or other necessary registration or licensing approvals required for his or her position with the Participating Employer, (iv) *any breach by the Employee of the Code of Conduct and Ethics established by his or her Participating Employer or any material violation of the employment or compliance policies or procedures of his or her Participating Employer*, (v) *any act of insubordination or misconduct by the Employee* or his or her reporting to work or otherwise working while under the influence of alcohol, narcotics or unlawful controlled substances, (vi) the Employee's conviction of any felony or the commission of a dishonest or fraudulent act, (vii) any conduct by the Employee that is in violation of state or federal law or that would constitute a basis for criminal charge or indictment of a felony or of a misdemeanor involving moral turpitude, (viii) the Employee's violation of any securities or commodities laws, any rules or regulations pursuant to such laws, any rules or regulations of any securities or commodities exchange or association of which the Participating Employer is a

---

[54] *Kimbrell v. Roberts,* 650 S.E.2d 444, 447 (N.C. Ct. App. 2007).

[55] *See* Plaintiff's Brief in Support of His Motion for Partial Summary Judgment at 2, Docket 73; Defendants' Response Brief at 24-25, Docket No. 83.

[56] *See* Plan at 11, Docket No. 83-2 (*emphasis added*).

member, or his or her violation of any similar federal, state or local law, regulation, ordinance or licensing requirement applicable to employees of financial institutions or (ix) *any other conduct on the Employee's part that may reasonably be expected to have a material adverse effect upon the financial interest or business reputation of the Participating Employer or other Affiliated Company.*[57]

In claiming Plaintiff was terminated "for cause," Defendants allege that Plaintiff (1) required female employees to hold Plaintiff's hands while he led them into office meetings; (2) rubbed female employees' shoulders; (3) regularly called employees "stupid" or "idiot;" (4) made sexual innuendoes or other inappropriate comments about female employees; (5) slapped food out of a female employee's hands; and (6) accused a female employee of having sex with a customer to get a better price. The veracity of these allegations remains in dispute.[58]

These allegations, viewed in a light most favorable to the Defendants, create a material question of fact as to whether or not Plaintiff's termination was "for cause" either under enumerated examples in Sections 3.16 (iv) (v) or (ix) of the Plan or under the Plan's catchall "but shall not be limited to" language. Consequently, summary judgment on the matter of whether or not Defendants breached their duties under the Plan by failing to pay Plaintiff the Special Award is improper.

**D. Plan Amendment/ Procedural Concerns**

Plaintiff further seeks summary judgement on the basis that Defendants breached the overall employment contract (the Offer Summary and the Plan) by failing to provide him the specific procedural protections set out in the Plan.[59] The Plan provides that any termination "for cause" be

---

[57]*Id*. at 16 (*bold/underline in original, italics added*).

[58]*See* Plaintiff's Brief in Support of His Motion for Partial Summary Judgment at 18, Docket 73 (claiming Wells Fargo "ginned up an investigation" and citing "Wells Fargo's trumped-up misconduct allegations"); Defendants' Response Brief at 21, Docket No. 83.

[59]Plaintiff's Brief in Support of His Motion for Partial Summary Judgment at 11, Docket 73.

the result of action by an administrative committee consisting of two or more members.[60] The Plan also required that an initial denial of benefits be in writing and created a procedure for appealing a denial of benefits.[61] Plaintiff argues that Defendants breached the employment contract because his claim was not processed by an administrative committee.[62] Further, he argues that because there is no longer a committee, Defendants could not perform the duty to provide written notice of denial from the committee as required by the Plan.[63] Plaintiff does not mention Defendants' failure to provide an appeal as required by the Plan.

Defendants argue that, as a consequence of the merger between Wachovia and Wells Fargo, the Plan was amended to include certain administrative changes that included a change in the requirement for committee action.[64] Plaintiff points to specific language in his negotiated Addendum to the Offer Summary in support of his proposition the Defendants lacked the right to amend the plan in this manner with regard to Plaintiff. The negotiated clause reads:

> Any reference in this document to a policy, plan or program is subject to the terms and conditions of such policy plan or program, as amended, and applicable law. *Wachovia reserves the right to modify, replace or eliminate any of its policies, plans and programs, at any time, without notice; provided, however, that if Wachovia changes its policies, plans or programs, such changes will not affect your right to receive the special award under the Wachovia Special Award Plan described under*

---

[60] *See* Plan at 13, Docket No. 83-2 ("The Plan shall be administered by a committee of two (2) or more members . . . The Administrative Committee shall also have the disretionary authority to determine whether the involuntary termination of any Participant's Employee status constitutes a Termination for Cause (pursuant to the criteria set forth in Section 3.16)").

[61] *See id.* at 28.

[62] Plaintiff's Brief in Support of His Motion for Partial Summary Judgment at 11, Docket 73.

[63] *See* Plaintiff's Reply Brief at 5-6, Docket No. 95.

[64] Defendants' Response Brief at 11, Docket No. 83.

*the "Compensation" section of the Offer Summary,* or your right to vested benefits under any Company plan.[65]

Looking to the plain language, it is apparent that Wachovia, and Wells Fargo as its successor, clearly retained the right to "modify," "replace" or even "eliminate" the Plan. The only protection provided Plaintiff under this language would be triggered by Plan changes that altered Plaintiff's "right to receive" the Special Award as outlined in his Offer Summary. This might include elimination of the Plan entirely, or reducing awards under the Plan, but the plain language of the negotiated clause does not seem to foreclose changing the claims process and procedure as was allegedly done by Defendant Wells Fargo.

At best, the juxtaposition of Defendants' right to "modify, replace, or eliminate" the Plan with the language promising that such changes will not "affect [Plaintiff's] right to receive" the Special Award creates an ambiguity as to what the Parties intended to be protected by Plaintiff's "right to receive." This ambiguity cannot be clarified by other provisions of the contract, as nothing else in the Offer Summary, Plaintiff's Addendum, or the Plan speaks to this question. Ultimately, extrinsic evidence will be required to determine the intent of the parties.

There is a question as to whether the Plan's choice of law provision governs this provision from the Offer Summary as the issue deals squarely with rights under the Plan.[66] Under North Carolina law, any ambiguity creates a question of fact for the jury.[67] Under Oklahoma law,

---

[65]*See* Plaintiff's Brief in Support of His Motion for Summary Judgment at 5, Docket 73; Plaintiff's Addendum to Offer Summary at 20, Docket No. 74.

[66]*See* Plan at 26, Docket No. 83-2 (The Plan *and all rights herenunder* shall be construed and governed in all respects in accordance with the laws of the State of North Carolina without resort to its conflict-of-laws provisions").

[67]*See Liptrap v. Coyne,* 675 S.E.2d 693,696 (N.C. Ct. App. 2009) ("If the agreement is ambiguous, however, interpretation of the contract is a matter for the jury") (*internal quotation*

15

ambiguities can sometimes be resolved as questions of law by the court.[68] However, regardless of the applicable law, the ambiguities present can only be resolved with extrinsic evidence, creating a mixed question of law and fact, the resolution of which is the province of the jury.[69] Consequently, summary judgment on the issue of whether Defendants breached their contract with Plaintiff by failing to provide the procedure as set out in the Plan prior to amendment is inappropriate.

## CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.[70]

*/s/ James H. Payne*
James H. Payne
United States District Judge
Northern District of Oklahoma

---

*omitted*).

[68] *See also Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc.,* 2007 OK 12, ¶ 27, 160 P.3d 936, 946 (interpreted as a matter of law only when ambiguity does not arise from extrinsic facts).

[69] *Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 764 (10th Cir.2004).

[70] Docket No. 72.