# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

JAMES L. KINCAID, JR.            )
                                 )
        Plaintiff,      )
                                 )
v.                               )  Case No. 10-CV-808-JHP -TLW
                                 )
WELLS FARGO SECURITIES, L.L.C.,  )
et al.                           )
                                 )
        Defendants.     )

## OPINION AND ORDER

Before the Court are Defendants' Motion for Partial Summary Judgment and Brief in Support (Motion),[1] Plaintiff's Brief in Response to Defendants' Motion for Partial Summary Judgment (Response),[2] and Defendants' Reply to Plaintiff's Response to Motion for Partial Summary Judgment (Reply).[3] For the reasons set forth below, Defendants' Motion for Partial Summary Judgment is **DENIED**.

## BACKGROUND

### A. Undisputed Factual Background[4]

The instant case arises from an employment contract between the Plaintiff Kincaid and

---

[1]Docket No. 127.

[2]Docket No. 83.

[3]Docket No. 95.

[4]The following facts are either not specifically controverted in accordance with Local Civil Rule 56.1(c), or are described in the light most favorable to the non-moving party. Immaterial facts are omitted.

1

Wachovia Capital, a subsidiary of Wachovia Corporation, executed by Plaintiff on July 14, 2008.[5] On December 31, 2008, Defendant Wells Fargo Securities, L.L.C., a subsidiary of Wells Fargo Bank, N.A., acquired Wachovia Corporation and assumed Wachovia Capital's liability under the contract.[6] At the time of the acquisition, part of Defendant Wells Fargo Securities' operations were located in Charlotte, North Carolina.[7] After the acquisition, Plaintiff acted as the "Commodities Managing Director of Fixed Income Division" for Wells Fargo Securities in Tulsa, Oklahoma.[8] On October 15, 2010, Plaintiff was terminated for alleged misconduct and violations of the workplace professionalism policy.[9]

**B. Relevant Procedural Background**

On November 23, 2010, Plaintiff filed the instant suit in Tulsa County District Court.[10] Plaintiff's initial Petition alleged two counts of breach of contract, one for specific performance and one for damages.[11] Defendants removed this case to the Northern District of Oklahoma pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, alleging complete diversity and an amount in controversy well in excess of the $75,000 jurisdictional minimum.[12]

---

[5]Plaintiff's Brief in Support of His Motion for Summary Judgment at 2, Docket 73.

[6]*Id.* at 3.

[7]Motion at 6, Docket No. 127.

[8]*Id.*

[9]Motion at 4, Docket No. 127.

[10]*See* Petition at 8, Docket No. 2-1.

[11]*Id.* at 13.

[12]*See* Notice of Removal 3-4, Docket No. 2.

On December 22, 2010, Defendants filed a Motion to Dismiss Plaintiff's Petition.[13] On January 5, 2011, Plaintiff filed his First Amended Complaint, and on January 21, 2011 the parties entered a joint stipulation to withdraw Defendants' Motion to Dismiss.[14] Upon entry of the joint stipulation the Court found Defendant's Motion to Dismiss moot.[15] On November 7, 2011, Plaintiff filed his Second Amended Complaint (Complaint), adding a claim of constructive fraud as against Defendant Wells Fargo Bank N.A. and/or Wells Fargo Securities, L.L.C., to his existing breach of contract claim.[16] Defendants' filed the instant Motion for Partial Summary Judgment on March 15, 2012, seeking summary judgment on Plaintiff's recently added constructive fraud claim.[17] The Motion is fully briefed and at issue.

## DISCUSSION

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides the standard courts must use when determining whether summary judgment is proper. According to the rule, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any

---

[13] See Docket No. 7.

[14] *See* Docket No.'s 14, 20.

[15] Docket No. 21.

[16] Docket No 71. In their Motion for Partial Summary Judgment, Defendants argue that Plaintiff alleges his constructive fraud claim against all three Defendants. Response at 16, Docket No. 127. However, Plaintiff specifically directs this claim as against "Wells Fargo." *See* Second Amended Complaint at 9, Docket No. 71. Plaintiff further explains that "Wells Fargo" is used in the pleading where it is unclear whether the action alleged was taken by Wells Fargo Bank N.A. or Wells Fargo Securities L.L.C. *See id.* at 1, ¶3. For ease of understanding, the Court uses the plural "Defendants" throughout this order, noting that it is a question of fact as to which entity is ultimately responsible.

[17] *See* Docket No.'s 72-74.

3

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[18] "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[19]

A nonmoving party may not rely merely on the unsupported or conclusory allegations contained in pleadings to rebut the movant's factual proof in support of the motion for summary judgment, rather he must respond with specific facts demonstrating genuine issues requiring resolution at trial.[20] "The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party."[21] "The litigant must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful."[22]

In an action for fraud under Oklahoma law, a Plaintiff must ultimately prove fraud by "clear and convincing evidence," but it is not necessary that each piece of evidence supporting a claim of fraud be clear and convincing in order to defeat summary judgment.[23] "However, there must be some evidence of each element of fraud presented before the issue may be submitted to the jury."[24] It is

---

[18] *See Jennings v. Badget*, 2010 OK 7, ¶¶ 4-5, 230 P.3d 861, 864; Fed. R. Civ. P. 56(c).

[19] *Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009).

[20] *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980).

[21] *Conaway v. Smith*, 853 F.2d 789, 794 (10thCir.1988).

[22] *Id.*

[23] *Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1180-1181 (10th Cir. 2008) ("[I]t is not necessary that evidence of fraud be 'clear and convincing' to escape a demurrer to the evidence") (*internal quotation omitted*).

[24] *Id.* (*internal quotation omitted*).

important to remember that summary judgment is a drastic remedy, and any relief pursuant to Fed.R.Civ.P. 56 should be awarded with care.[25]

**B. Plaintiff's Constructive Fraud Claim**

The whole of this litigation is centered on Plaintiff's allegation that his termination was planned and pretextual. From what the Court can discern, Plaintiff's constructive fraud claim specifically contends (1) that Defendants selectively disclosed facts about a potential move to Charlotte;[26] (2) that from these disclosures Plaintiff was given a false impression that either a move to Charlotte was not necessarily happening, or, should it happen, Plaintiff would be able to part ways with the company and still receive the Special Award;[27] and (3) that Defendants had formulated a plan, concealed from Plaintiff, to terminate Plaintiff in a fashion that allowed Defendants to move the operation to Charlotte without paying Plaintiff the $2.25 million Special Award.[28]

In Oklahoma, constructive fraud is defined as:

1. In any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or,

2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.[29]

---

[25]*Conaway,* 853 F.2d at 792.

[26]Plaintiff's Second Amended Complaint at 4-6, Docket No. 71; Response at 25-27, Docket 139.

[27]*See id.* (Defendants took actions that "plainly communicated" office wasn't closing; statements about move suggested to Plaintiff that he was faced with decision to leave company with bonus in hand or try to make some arrangement leaving him in Tulsa).

[28]*Id.*

[29]Okla. Stat. tit. 15, §59.

5

To recover under a theory of constructive fraud, Plaintiff must prove:

1. That the defendant owed plaintiff a duty of full disclosure. This duty could be part of a general fiduciary duty owned by the defendant to the plaintiff. This duty could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter;

2. That the defendant misstated a fact or failed to disclose a fact to plaintiff;

3. That the defendant's misstatement or omission was material;

4. That plaintiff relied on defendant's material misstatement or omission; and
5. That plaintiff suffered damages as a result of defendant's material misstatement or omission.[30]

## *1. Duty to Disclose*

As noted above, a duty to fully disclose may arise from a general fiduciary duty or, as announced in the Oklahoma Supreme Court case of *Uptegraft v. Dome Petroleum Corporation*, may arise if a party selectively discloses facts that create a false impression.[31] Plaintiff's Complaint states that Defendants "convey[ed] a false impression by the disclosure of some facts and the concealment of others" that was "in effect a false representation that what was disclosed was the whole truth."[32] In support of that allegation, Plaintiff's Complaint sets out that Defendants, specifically Defendants' employees Roncevich and Kauranen, made a partial disclosure indicating a possible move to Charlotte, thus undertaking a duty to Plaintiff to tell the whole truth about matters relating to the

---

[30]*Pabst*, 537 F.3d at 1180-1181.

[31]*See id.* at 1181 (*citing Uptegraft v. Dome Petroleum Corp.,* 1988 OK 129, ¶12, 764 P.2d 1350, 1353.

[32]Second Amended Complaint at 9, Docket No. 71.

6

relocation.³³ This allegation indicates a duty arising under the *Uptegraft* standard.³⁴

Plaintiff alleges that the limited disclosures regarding the move gave him the false impression that he would have the decision to "either (i) leave the company with bonus in hand (because Wells Fargo could not *force* a move) or (ii) to try and make some other arrangement with the company that would leave him in Tulsa while the rest of the office personnel moved or were terminated."³⁵ Plaintiff further alleges that while he was operating under this false impression, Defendants, knowing Plaintiff would not move to Charlotte, were concealing the fact that (1) the move to Charlotte was definite and (2) Defendants had devised a plan to terminate him "for cause" in order to effect the transfer to Charlotte without paying Plaintiff the $2.25 million Special Award.³⁶

Defendants contend that Plaintiff offers no direct evidence indicating that there was a plan in place either to move operations or to terminate Plaintiff.³⁷ However, Plaintiff offers that the following undisputed evidence, when taken together, supports a reasonable inference that such a plan was in place: (1) Plaintiff was "encouraged," or it was "suggested," that Plaintiff move to Charlotte by supervisor Roncevich, and was later asked if he would consider working 50% of his

---

³³*Id.* at 5, 9.

³⁴Plaintiff's Response also alleges Defendants had a positive duty to speak based on " a special relationship" established by the parties' positions relative to the employment contract, and that Defendants' silence may even constitute actual fraud. *See* Response at 22-23, Docket No. 139. These allegations and arguments were not raised in Plaintiff's Second Amended Complaint, therefore are not properly before this Court. *See Borum v. Coffeyville State Bank*, 6 Fed.Appx. 709, 712 (10th Cir.2011) (*citing Lawmaster v. Ward*, 125 F.3d 1341, 1346 n. 2 (10th Cir.1997).

³⁵Response at 26, docket No. 139.

³⁶*Id.*

³⁷Motion at 16-17, Docket No. 127.

time in Charlotte;[38] (2) September 2010 emails between Kauranen, Roncevich, and Kincaid in which Kauranen indicates a communication breakdown between the Tulsa and Charlotte offices and a suggestion that the physical operation be moved to Charlotte, "where it probably belongs;"[39] (3) the fact that the investigation into Plaintiff's misconduct followed this email suggestion by less than two weeks;[40] (4) references in handwritten notes by Wells Fargo employee Lisa Engstrom, to "ongoing discussions" about moving the Tulsa operation to Charlotte, as well as Engstrom's deposition testimony recounting discussions about potential repercussions from terminating Plaintiff;[41] and (5) the ultimate office relocation roughly 60 days after Plaintiff's termination.[42]

The email evidence and Plaintiff's conversations with Roncevich establishes that facts were disclosed regarding a possible move. If there was a definite plan in place (1) to transfer Wells Fargo operations to Charlotte and/or (2) to terminate Plaintiff in order to avoid paying the special award, of which Plaintiff was kept unaware, a reasonable jury would likely find that Defendants had a duty to disclose the plan. Defendants argue that in order to find that a question of material fact as to the plan's existence arises from this evidence, the Court must unacceptably stack inference upon

---

[38]Motion at 17, Docket No. 127; Response at 16, Docket No. 139.

[39]*See* Response at 16, Docket No. 139.

[40]*Id.*

[41]*Id.* at 17-18; Motion at 17, Docket No. 127. Due to poor copy quality, the Court cannot read the Engstrom notes. However, the parties do not dispute that the notes contain the reference to "ongoing discussions."

[42]Response at 18, Docket No. 139. There is also a dispute as to whether or not Plaintiff was "demoted" prior to his termination, and what, if any, evidence that provides in support of Plaintiff's allegations of a plan to terminate him. *See* Response at 12, Docket No. 139; Reply at 7, Docket No. 154. The resolution of this dispute and a decision as to whether or not that resolution supports that the alleged plan was in place is a matter for jury consideration.

inference.[43] The Court disagrees.

Although Plaintiff's evidence as to the plan's existence is largely circumstantial, direct evidence in cases similar to this is often impossible to find. In fact, Oklahoma courts have noted that fraud "is more often shown by circumstances than in any other way."[44] Here, the temporal proximity of both the email discussion regarding transfer of operations to the misconduct investigation, and of Plaintiff's termination to the actual transfer of operations, permit a reasonable inference that the alleged plan existed. Further support for such an inference comes from the Engstrom testimony regarding pre-termination discussions as to the anticipated difficulties associated with terminating Plaintiff. Taken together, these coincidences indicate that Plaintiff's version of events is not necessarily fanciful.

It is important to note that the real dispute here centers not on the veracity of the facts presented. The parties generally agree as to the substantive facts. The parties disagree as to what those facts mean. Plaintiff argues that, taken together, the facts reasonably indicate a conspiracy against him. Defendants posit that the facts demonstrate a logical chain of business decisions.[45] The actual dispute lies in what is not on the face of the evidence. Consequently, the question of whether or not the alleged plan existed will turn on a determination of the motives of Defendants' employees. This determination will ultimately hinge on assessments of witness credibility. At a minimum, these

---

[43]Motion at 19, Docket No. 127; Reply at 7, Docket No. 154.

[44]*Sellers v. Sellers*, 1967 OK 34, ¶35, 428 P.2d 230, 238-39 (*internal quotation omitted*).

[45]*See* Motion at 19, Docket No. 127 (arguing practical hardship of moving the office indicates there was no plan); *see also* Reply at 9, Docket No. 154 (arguing Engstrom's testimony about termination discussion speaks to Plaintiff's litigiousness rather than a plan).

necessary assessments of witness credibility require jury consideration.[46]

Contrary to Defendants' assertions, Plaintiff need not present "clear and convincing evidence" of each element of the alleged fraud to defeat summary judgment.[47] The proffered evidence, combined with the anticipated trial testimony, is sufficient to create material questions of fact upon which the jury can make reasonable inferences as to whether or not the alleged plan existed and therefore whether or not Defendants owed Plaintiff a duty to disclose it. Consequently, the Court finds that Plaintiff has presented sufficient evidence to create a material question of fact, suitable for jury consideration, as to this element.

## 2. Failure to Disclose, Materiality, Reliance, and Damages

Because there remain material questions of fact regarding Defendants' duty to disclose, whether or not Defendants failed to disclose in light of that alleged duty is a question for the finder of fact. Plaintiff has presented sufficient evidence to support a reasonable inference that, if there was a duty to disclose, then Defendants failed to disclose the complete facts of their plan. Furthermore, this silence, if true, is certainly material.

Plaintiff contends that had he known about the definite plans to close the Tulsa Office or the hidden plot to terminate him, he would have declared the contract repudiated by Wells Fargo.[48] Plaintiff further contends that such a repudiation would entitle him to the $2.25 million Special

---

[46] *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir.2000) ("It is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment")

[47] *Pabst*, 537 F.3d at 1181 (*internal quotation omitted*). *See, e.g.*, Motion at 14, Docket 127 ("Timing does not present the clear and convincing evidence necessary for a constructive fraud claim").

[48] Response at 11, Docket No. 139.

Award due under his employment contract.⁴⁹ These claims speak both to Plaintiff's reliance on Defendants' half-truth, and to the extent of Plaintiff's damages based on this reliance. Disputes as to the veracity of Plaintiff's claims of reliance and actual damages are questions of credibility properly adjudged by the jury. Considering all the evidence, the Court finds Plaintiff has provided sufficient evidence supporting each of the remaining elements of his constructive fraud claim to submit this claim to a jury.

## CONCLUSION

Considering all of the abovementioned reasons, summary judgment is improper, Defendants' Motion for Partial Summary Judgment is **DENIED**.⁵⁰

James H. Payne
United States District Judge
Northern District of Oklahoma

---

⁴⁹*Id.*

⁵⁰Docket No. 127.